John T. Casey, J.
The petitioners, both foreign not-for-profit corporations, whose members conduct approximately 85% of the swimming pool and related business in the United ¡States, instituted this article 78 proceeding for a judgment vacating an order of the Public Service Commission (herein PSC) prohibiting new or additional natural gas service for heating swimming pools. In the alternative, they request an order remanding the matter to the PSC for a hearing and reconsideration. Finally, the petitioners seek an injunction prohibiting the PSC from enforcing or commencing any action based upon the order.
By order dated May 7, 1974, the PSC required all gas companies and other interested parties to show cause why new or additional gas services for heating gas-fired outdoor swimming pools should not be prohibited. The order was issued in a continuing proceeding dealing with proposed restrictions on supply and use of natural gas in areas of New York State affected by a ga,s shortage. On August 21, 1974, the PSC, with two commissioners dissenting, issued an opinion and order prohibiting new and additional natural gas service for the purpose of swimming pool heating. The basis for the majority determination was: “ We conclude that pool heating is a non-essential use of gas and, in that respect, a wasteful use in this period of gas shortage. More essential uses such as space heating uses for new apartment buildings, hospitals, schools and industries now are being denied new or increased service due to New York’s gas supply situation.”
The petitioners contend that the determination should be set aside, primarily because it is beyond the power of the PSC and is in direct conflict with the statutory statement of policy contained in subdivision 1 of section 66-a of the Public Service Law. This argument may be subdivided into several components: (1) the use of natural gas for heating swimming pools is not a wasteful device or practice under section 66-a of the Public Service Law as previously defined by the PSC; (2) the subject *657 order affects domestic consumers of natural gas, and, therefore, contravenes the legislative priorities in subdivision 1 of section 66-a of the Public Service Law; (3) prior to issuing the order the PSC failed to make the requisite finding of gas shortages in specific areas as required by subdivision 2 of section 66-a; (4) the PSC lacks the power to prohibit nonessential .uses of natural gas.
With regard to the determination that heating swimming pools with natural gas is a wasteful practice, the judicial review is limited to whether the PSC was arbitrary and capricious. In Leroy Fantasies v. Swidler (44 A D 2d 266, mot. for lv. to app. den. 34 N Y 2d 519) the PSC prohibited the use of natural gas as fuel for decorative torches upon the ground that a decorative torch was a wasteful device. The PSC argued before the Appellate Division, Third Department, that wasteful could be construed as consuming gas either without useful purpose or in amounts in excess of those necessary or appropriate. The petitioners urge that the PSC is bound by their prior definition of “wasteful”. Consequently, the petitioners continue, since the use of natural gas to heat swimming pools is neither without useful purpose nor excessive, then the practice is not “ wasteful ”.
The PSC is not bound by the criteria used concerning decorative torches. For various reasons the PSC may designate a device or practice as “wasteful”. Indeed, just as it was impractical to burden the Legislature with the task of enumerating the numerous .situations which constitute wasteful devices and practices and to formulate specific rules for each situation, it would be unfair to bind the PSC to the definition of “ wasteful ” used in determining that decorative torches were a wasteful device. (Cf. Leroy Fantasies v. Swidler, supra.)
The petitioners’ claim that the order contravenes the legislative priorities contained in subdivision 1 of section 66-a of the Public Service Law is more substantial.
That subdivision provides: “ 1. It is hereby declared to be the policy of this state that when there develops in any area a situation under which a gas corporation supplying gas to such area is unable to meet the reasonable needs of its consumers and of persons or corporations applying for new or additional gas service, the available supply of gas should be conserved for the use of domestic consumers and, thereafter, for the use of persons or corporations already receiving service and that to carry out this declared policy the jurisdiction of the public ser *658 vice commission should be clarified.” Obviously, it establishes legislative priority in favor of domestic consumers.
In another section, the Legislature has also prohibited wasteful devices and practices. (Public ¡Service Law, § 66-a.) Thus, the Legislature has carved out from the priority provisions of subdivision 1 of section 66-a, any wasteful device or practice. Consequently, if it is determined that a domestic consumer is using natural gas in a wasteful manner, such use may be prohibited without first curtailing or limiting the supply or use of natural gas for nondomestic consumers. On the other hand, if the use by a domestic consumer is not wasteful he has a priority to the available supply of natural gas over nondomestic users under the circumstances set forth in subdivision 1 of section 66-a.
The formula used by the PSC in the present matter equates “wasteful” with a use or practice that is nonessential when compared with uses or practices of nondomestic consumers. Obviously, the unbridled use of the formula could result in the unwarranted encroachment of the PSC upon the legislative priority afforded the domestic consumer. For example, carrying the formula to extremes the PSC could determine that the use of natural gas in stoves was wasteful because it was not as essential as the use of natural gas for heating schools. An order prohibiting the use of natural gas for such purposes would violate the priority rights of domestic consumers.
In the instant case, however, the determination that the use of natural gas for heating swimming pools was “wasteful” was not arbitrary or capricious. The facts presented clearly support a determination of “wasteful” without resort to the PSC’s formula. As a guide for future action, I have outlined the dangers, as I see them, inherent in that formula.
Turning to petitioners’ claim that the PSC has failed to find area gas shortages required by subdivision 2 of section 66-a. Subdivision 2 of section 66-a provides: “ 2. * * * The commission shall have the power, upon the finding that there exists such a shortage of gas in any area of the state, that the gas corporation supplying such area is unable and will be unable to secure or produce sufficient gas to meet reasonable needs of its customers and of persons or corporations applying for new or additional gas service, to require such corporation to immediately discontinue the supplying of gas * * * to customers usmg gas for a purpose prohibited by the commission”. (Emphasis added.)
Although the PSC may have to determine there is an area gas shortage before it can require a gas corporation to discontinue *659 uses that are wasteful, it need not make such a determination when its order operates prospectively. The PSC’s order does not affect customers using natural gas to heat outdoor swimming pools prior to the effective date of the order. Consequently, a determination of an area shortage under subdivision 2 of section 66-a is unnecessary.
I have considered the other arguments of the petitioners and found them to be without merit. All of those arguments are contrary to the decision in Leroy Fantasies.
Petition dismissed.